## WESTBROOK *v.* THOMPSON.

### (*Jackson.* April 7, 1900.)

1. DECREE. *Not annulled, when.*

   Decree by default, rendered against a nonresident upon publication, will not be set aside, upon a bill assailing it, filed fifteen years after its rendition, and after partial loss of the original files, because a confessedly imperfect transcript of the original record fail to disclose any affidavit of nonresidence authorizing the publication, especially where it appears that the complaining party had actual knowledge of the pendency of the suit, and knew, in a general way, of its object. (*Post, pp. 369, 370.*)

2. SAME. *Within scope of bill.*

   A decree pronounced upon a bill filed by an executrix against all parties interested in the testator's estate, to obtain construction of the entire will, declaration of the rights of the parties, and sale of land to pay debts, does not go beyond the scope of the bill in declaring that certain clauses of the will are precatory, especially where the fund mentioned in such clauses may be needed and applied to satisfy the claims of creditors or other legatees. (*Post, pp. 369, 370.*)

3. SAME. *Not objectionable as settling future rights.*

   And such decree is not objectionable as having been made upon a bill prematurely brought to settle future rights, where it is apparent that debts and legacies which testator directed to be paid out of the rents and income of his land cannot be satisfied in that manner and that the debts must be paid by sale of realty, thereby cutting off legacies, in part, at least. (*Post, pp. 370, 371.*)

4. SAME. *Estoppel of.*

   A party who has, for fifteen years, submitted to a decree declaring the provisions made for him by a will as merely precatory, and appropriating the fund out of which it should have been paid to other purposes, cannot recover personal decree

therefor against the executor for the misappropriation or recover the property itself. (*Post, pp. 371–375.*)

---

FROM OBION.

---

Appeal from Chancery Court of Obion County. JOHN S. COOPER, Ch.

J. H. MALONE. for Westbrook.

MOORE & WELLS for Thompson.

WILKES. J. This is a bill to have the will of Dr. E. F. Westbrook construed and the rights of the complainant declared thereunder, and to have set aside certain decrees previously rendered by the Chancery Court of Lake County in another cause, in which a construction was placed upon said will and certain lands were sold in which the complainant was interested either as contingent owner in fee or as contingent owner of a life estate in remainder.

The will in controversy was executed in August, 1877, and is in the words and figures following:

"In the presence of God I make my last will and testament.

"First, that my debts be paid as fast as they fall due from the proceeds of my place. That

Westbrook *v.* Thompson.

my wife, Jennie R. Westbrook, shall have complete control of my estate without bond or security or any administration on said estate. After paying my debts I leave to her the entire proceeds of said estate, after paying necessary expenses, during her life, which proceeds she can use as she sees proper to do. I also will her all of the land west of the tract upon which Simmons now lives, running through to the Barham line, to have and to hold, sell or dispose of, as she sees proper to do, and that she may deed, will or convey same in any manner suitable to her wish and taste. The balance of my land I will and bequeath to my brother, he to be possessed of same after my wife's death, not until; and if he should die, then said land to revert to my nieces and heirs of my sister. After paying each of my wife's nieces and nephews $500 apiece out of the rents as they may accrue from same, it is my wish that my brother draw from my estate, during his life, after all debts are paid, six hundred dollars a year, if he should need same, which is left to his wish and wants. I wish my wife to see to the wants of her sisters during their lives. I wish Westbrook Donaldson given a liberal education at my expense. I wish my wife to live and enjoy herself where she will be most happy. I wish my wife to see to Tennessee Reynold's wants, for her kindness to me in a crippled

condition and old age. To the world I will say that I am a true believer in Christianity. To all of the above I subscribe as my last will and testament this 24th of August, 1877.

"E. E. WESTBROOK."

"CODICIL.

"I make John J. Ross my equal heir with my two nieces. In case of death of either of the three without heirs, said shares to revert to my estate and be distributed to my wife's heirs, out of which I will Minor and Thomas Simmons $500 each. August 28, 1877.

(Signed).    "E. E. WESTBROOK."

The bill under which it is claimed this will was construed was filed in 1883 by the widow and executrix of E. E. Westbrook, and resulted in a decree construing the will and also in a decree for the sale of certain lands to pay debts owing by the testator. It is objected that the complainant is not bound by the decrees in that cause because he was not properly made a party to it; that certain. questions adjudicated were not raised nor properly involved by the pleadings, especially as to the provision for an annuity of $600 per year to complainant, and, further, that if the proceedings be considered regular and valid, still complainant has a right of subrogation arising out of the sale of the land in which he

was interested, and which he insists in any event he is entitled to compensation for.

The following is the decree construing the will, and which is now attacked:

"Be is remembered, that on this the 26th day lolf October, 1883, came on this cause to be heard before the Hon. John Somers, Chancellor, etc., upon the bill, exhibits, answer of the minors, order *pro confesso* and proof, when the Court is of the opinion, and so declares, that complainant, Jennie R. Westbrook, by the will of E. E. Westbrook, takes an absolute title in fee to the land described in the will of E. E. Westbrook, as to all the land west of the tract upon which Simmons now lives, running through to the Barham line. That the said Jennie R. Westbrook, by said will, takes a life estate in all the balance of the lands of said testator, and the rents and profits thereof during her life, subject to the payment of the debts of the estate, remainder to the brother of the testator, John H. P. Westbrook.

"But if he should survive the said Jennie R. Westbrook, he, the said John H. P. Westbrook, takes the balance of the land of the said testator in fee, but if he should die before the said Jennie R., the said balance of said land goes to the nieces of said testator, the heirs of his sister and John J. Ross, in fee, subject to charge of $500 each in favor of the nephews

and nieces of said Jennie R. out of the rents and profits of said land. The Court is of opinion, and so declares, that the provisions in favor of the brother of said testator, that he shall have $600 a year out of said estate, and provisions in favor of Westbrook Donaldson and in favor of Tennessee Reynolds are merely precautions [precatory?] , and they take nothing under said will, and that the provisions of the codicil in favor of Minor Simmons and Thomas Simmons are too remote, and they take nothing under said will.

"It is further ordered by the Court that this case be referred to the Clerk and Master, and that he cause a survey to be made of the lands of which testator died seized and possessed, particularly describing the tract willed to said Jennie R., and the balance of the land. Also that he take and state an account of the amount of assets of said estate which have come to the hands of said Jennie R., and from what source; the amount she has paid out for the benefit of same, and out of what funds; and the charges and expenses of managing said estate, and the amount of debts due and owing from said estate, and that he report to the next term of this Court."

There was a demurrer to the present bill, which was in some features sustained and in others

overruled, and there was an appeal by both parties and both have assigned errors.

The errors assigned by the complainant are that the Chancellor improperly held that the provision of the will giving the $600 annuity was merely precatory, and not such as could be enforced; and that the holding to this effect in the original bill construing the will was conclusive.

It will be necessary in the first instance to consider whether the decrees in the original case construing the will are valid. It is said they are not, because complainant was not made a party defendant by service of process, but only by publication, and that publication was not in that case authorized, inasmuch as it does not appear the bill was sworn to. It appears that a complete transcript of the original proceeding was not filed as an exhibit to this bill, although it attacks the legality and validity of that proceeding. This is excused on the ground that portions of the record have been lost and cannot now be produced. It is admitted that complainant had actual knowledge of the proceeding, and it is apparent that he must have known in a general way, at least, of what was intended to be done by it and that he interposed no objection and made no defense. In the absence of a complete and perfect record, we must assume that

20 P—24

the Court had before it all parties necessary and proper for the rendition of the decree as made. As to the absence of an affidavit in the bill to warrant publication as for a nonresident, it is sufficient to say that such affidavit may be made a part of the bill, or it may be on a separate paper, under the provisions of the statute (Shannon, § 6163). It does not appear that there was no such separate paper in the case, and we must presume that there was such paper, in the absence of a perfect record, to justify and authorize the publication. It is said, however, that the adjudication of complainant's right to the $600 annuity was not involved in the scope of the pleadings in the original case. That bill was filed generally for a construction of the entire will, and for an adjudication of the rights of the parties thereunder, and also to sell lands to pay debts because of the absence of personal assets for that purpose.

It was necessary to a proper decree in the case that the right of complainant to this annuity should be adjudicated and fixed, as it would be a charge upon the estate if it were a valid provision.

Complainant confessedly had actual notice of the pendency of the proceeding, and must be held to have known of the construction placed upon the will and the decrees for the sale of the land, and he made no objection thereto, but

allowed the land to be sold, and the bill wholly fails to show at what time he first made any claim for the annuity, which, by the terms of the will, could only become a charge upon his making demand. The bill charged that there were no assets for the payment of the debts; that there were outstanding some $7,000 of debts and some costs, and that the land which was sold was under trust deed to secure this debt, and a sale of a part of the same would be necessary for that purpose. So far therefore as the decrees in that case go, they must be held as binding upon the complainant as if he had been a party by personal service and had assented thereto or allowed the decrees to go by default. We do not think the bill was premature as one to declare future rights, but the matters were essential to be settled at that time, as was done so far as the annuity was concerned.

Complainant John H. P. Westbrook thus sets forth his claim of subrogation:

"Complainant is further advised that by the plain meaning of said will the income and profits of the entire estate of E. E. Westbrook were, by the terms of the will, set apart as the primary funds out of which to pay the debts of the estate; and that, as far more income of the estate came into the hands of the said Jennie R. Westbrook than was necessary to pay the debts, she should have so applied the same to

the exoneration of the realty as between herself and the complainant; and that, while the creditor to whom the $7,000 'was due was in no manner bound by the terms of the will, but had a legal right to pursue the real estate, and on which he had a trust deed, yet as the land to which it turns out that this complainant was ultimately entitled, was sold to pay debts of the estate which the executrix should have paid out of the income in her hands, he is entitled to be subrogated to the rights of the creditors, or, at any rate, is entitled to recover the amount for which his land was sold, with interest, and for this he sues."

This contention of complainant was virtually sustained by the Chancellor, inasmuch as he refused to sustain the demurrer which questioned the right to such subrogation.

It does not clearly appear what the rights of the creditors were to which the complainant asks to be subrogated, nor against whom or what property such subrogation shall be enforced. To properly dispose of this claim and contention, it is necessary to consider what the rights of the creditors were to which complainant could be subrogated. This creditor had not only a debt against the testator, but also a mortgage upon the land which was sold, to secure the debt. If we concede that the will directed the debt to be paid out of the rents and profits of the land pri-

Westbrook *v.* Thompson.

marily, and not out of the land itself, still the creditor was not bound by the provisions of the will, but clearly had his remedy to collect his debt by enforcing his mortgage on the land, as well as by applying the personal assets. He was not confined to either. His debt was, as a fact, paid out of the land by a sale of it, with his knowledge and without any objection upon his part, but by the executor. He thereby waived his right to have applied the personal estate. That personal estate has now, so far as we can see, been consumed by the widow, and there is no allegation that any remains, so that it is no longer an asset, and it is difficult to see what there is tangible in asserting a right of subrogation as against it. It would seem that the only right which complainant would now have, if he has any, would be, first, to recover the specific land thus wrongfully sold. This he has not attempted to do, and whether he could do so it is useless to decide. Second, to recover personal judgment against the widow and executrix for selling complainant's interest in the land when she should have applied the rents and profits of the property in its exoneration. The bill does not ask specifically for this relief, but it may be that such relief, if it were proper, might be had under the prayer made in general terms that the complainant recover the amount for which his land was sold, and interest.

But here again the terms of the original decree construing the will and decreeing the sale of the land stand in the complainant's way. If his land was being improperly sold to pay debts in that cause, or if lands in which he had only a contingent right or interest was being sold for that purpose in a suit to which he was a party, and there were other funds which should be applied, it was incumbent upon him to interpose an objection and have the rents and profits applied so as to save the land. This he did not do, but permitted the land to be sold, and only makes complaint after the lapse of over fifteen years, when the widow has died and the papers in the proceeding have been partially destroyed. This right of objection was one which should have been exercised at the time, and, not having been made then, the matter stands as if the complainant had assented to the sale. We take it that the scope and extent of the present bill is to subject the personal estate left by the widow and executrix and the land devised to her absolutely under the will for the value of complainant's interest in the lands sold, but before this can be done we are of opinion there must be established personal liability upon the part of the widow and executrix arising out of the improper and unfaithful execution of the trusts of her husband's will. If the property in the hands of the present claimants can be held liable at all,

it must be on the ground that there was liability upon the part of the widow and executrix, who bequeathed and devised it to them. It is only, as we think, upon this theory that the Chancellor could have sustained the portions of the bill which he did.

The Court is of opinion that the complainant is precluded by the result of the original suit from setting up any claim under his bill; that in the absence of a perfect transcript of such former case, the Court must presume that all the facts appeared to make the sale of the land valid and binding, and that the pleadings and proof were sufficient for that purpose, and complainant is now estopped to claim anything on account of the annuity or the sale of the land, either by subrogation or by way of personal judgment, and the bill is dismissed at cost of complainant and his surety.